# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TOSIN ADEGBUJI,** | : | **No. 3:08cv1714** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **MICHAEL MUKASEY, Attorney** | : | |
| **General of the United States** | : | |
| **of America;** | : | |
| **MICHAEL CHERTOFF,** | : | |
| **Secretary, Department of Homeland** | : | |
| **Security;** | : | |
| **EMILIO GONZALEZ, Director, United** | : | |
| **States Customs and Immigration** | : | |
| **Service;** | : | |
| **JULIE MYERS, Assistant Secretary,** | : | |
| **Immigration and Customs** | : | |
| **Enforcement; and** | : | |
| **MARIE DAMOUR, Acting Minister,** | : | |
| **Consular Affairs,** | : | |
| **Respondents** | : | |

## MEMORANDUM

Before the court is the instant petition for a writ of mandamus (Doc. 1).  For the reasons stated below, the court will deny that petition.

## Background

Petitioner Tosin Adegbuji is a native and citizen of Nigeria.  (See Adegbuji v. Quarantillo, No. 02-4878 (D. N.J. 2003), attached as Exh. A (hereinafter "Exh. A") to Government's Response to the Court's Order to Show Cause (Doc. 11) (hereinafter "Government's Response") at 2).   Adegbuji entered the United States on July 28,

1986 as a non-immigrant visitor.  (Id.).  He had permission to remain in the county

until January 27, 1987.  (Id.).  Petitioner did not depart by that date, but instead

married a United States citizen on October 18, 1987.  (Id.).  His wife filed a petition

for an immigrant visa for him, along with an application for adjustment of status.

(Id.).  The Immigration and Naturalization Service ("INS") discovered that petitioner

had submitted a false Nigerian divorce decree with his application for adjustment,

however, and issued a notice denying the application.  (Id. at 3).  Plaintiff's American

wife then withdrew her petition and on November 7, 1989 the INS denied petitioner's

application for a status adjustment.  (Id.).

     A court in the United States District Court for the District of Rhode Island

convicted petitioner of fraudulent use of access devices on December 15, 1989.

(Id.).  On January 10, 1990, a Rhode Island state court convicted him for writing

fraudulent checks.  (Id.).  On the day of petitioner's federal conviction, the INS issued

a notice informing him that he was inadmissible into the United States because he

had been convicted of a crime involving moral turpitude and was not in possession

of a valid immigrant visa.  (Id.).  Petitioner's Rhode Island state-court conviction for

passing a bad check led to a sentence of two-years probation.  (See United States v.

Mafanya, 24 F.3d 412, 414 (2d Cir. 1994)).[1]  The court issued a warrant for his arrest

when he failed to make the required restitution.  (Id.).

_____

     [1]Petitioner used a false name, Abel Manfaya, and claimed to be from South Africa
when arrested in this 1994 case.  See Manfaya, 24 F.3d at 413.

An Immigration Judge ("IJ") in 1991 ordered petitioner excluded and deported from the United States.  Petitioner reentered the United States in January 1993, using a false identity.  (Exh. A at 4).  The United States Secret Service arrested him in July 1993 on charges of illegal use of a credit card.  (Id.).  A court later sentenced petitioner to thirteen months in prison and three years supervised release.  (Id.).  Petitioner apparently absconded from parole and returned to Nigeria after this release.  (Id.).

Petitioner again attempted to enter the United States on May 1, 2002.  (Id.).  He applied for admission as a visitor under the Visa Waiver Program, presenting a false passport from the United Kingdom.  (Id.).  Border officials noticed this fraud, and also discovered that a warrant for petitioner's arrest existed based on his 1993 conviction.  (Id.).  Turned over to the United States Marshal's service for prosecution, petitioner was eventually convicted and sentenced to time served.  (Id. at 5 n.3).  Once he completed his sentence, officials returned petitioner to the custody of the immigration service.  (Id. at 5).  On July 10, 2002, the INS found petitioner inadmissible to the United States, as he was an alien convicted of a crime involving moral turpitude and had attempted to gain entry to the United States by means of fraud or wilful misrepresentation of a material fact.  (Id.).

The United States on July 16, 2002 attempted to remove petitioner to the United Kingdom.  (Id.).  The United Kingdom refused to accept him and returned him to United States custody.  (Id.).  The United States then attempted to remove

3

petitioner to Nigeria, but he expressed a fear of persecution if sent to that country. (Id.).  Petitioner filed an application for asylum.  (Id. at 6-7).  An immigration judge held a hearing on this application.  (Id. at 7).  On December 3, 2002, the judge issued an verbal decision denying petitioner's request for asylum.  (Id.).  The Board of Immigration Appeals remanded the case for further proceedings on April 3, 2003. (See Exh. B to Government's Response).  Thereafter, the Immigration Judge granted the application and the Board of Immigration Appeals affirmed this decision on January 28, 2004.  (See Exh. C to Government's Response).  On February 11, 2005, however, petitioner was removed to the United Kingdom, where he today resides.  (See Petition for Writ of Mandamus (Doc. 1) (hereinafter "Petition") at ¶ 5).

On October 4, 2006, petitioner mailed an Application for Advance Permission to Enter as Non-Immigrant Pursuant to INA Section 212(d)(3) ("Application") to the United States Citizenship and Immigrant Services office in New York.  (Id. at ¶ 16). Petitioner contends that he had filed several civil actions in Middlesex County, New Jersey while he was detained there awaiting removal.  (Id. at ¶ 12).  He alleges that these actions sought damages for personal injuries petitioner sustained during his detention.  (Id.).  The Application sought a waiver of petitioner's inadmissibility order so that he could attend jury trials on these matters.  (Id.).  On August 29, 2008, the Visa Coordination Unit for the United States Embassy in London, England informed petitioner that his application had been denied.  (See Exh. 1 to Petition).  The Unit denied petitioner's application because he had committed a crime of moral turpitude.

4

(Id.).

After being denied permission to enter the United States, petitioner filed the instant action on September 16, 2008.  Petitioner contends that the civil actions he filed in United States district court had been set for trial.  Since he had been deported and could not attend trial, the cases had been dismissed with prejudice.  Later, however, the court determined that plaintiff could reopen his cases if he could certify that he had permission to enter the United States to prosecute his actions.  After the Visa Coordination Unit denied petitioner's application he found that he had no means to comply with the court order.  Fearing his cases would be dismissed permanently, petitioner filed the instant action.  He seeks an order from the court instructing the defendants to rule on his application and declaring that consular decision to deny his application was contrary to law.  He also asks the court to compel the defendants to allow petitioner entry into the United States to pursue his court cases.

After receiving the petition, the court ordered (Doc. 3) the defendants to file a response.  The defendants did so (Doc. 11), bringing the case to its present posture.

**Jurisdiction**

Because petitioner brings this action pursuant to 28 U.S.C. § 1361, the court has jurisdiction to hear the case.  See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty

5

owed to the plaintiff.").

**Discussion**

In their response, respondents contend that this court lacks jurisdiction to

adjudicate the matter for two reasons.  First, the government insists that this court

has no jurisdiction to issue a writ of mandamus requiring that the defendants

expedite a decision on an application to enter as a nonimmigrant.  Second, the

government asserts that this court does not have jurisdiction to review the decision

of a consular official in a foreign country.

Petitioner seeks in part a writ of mandamus requiring the Bureau of

Immigration and Customs Enforcement to expedite its decision on his waiver

application.  A writ of mandamus "will issue only to compel the performance of 'a

clear nondiscriminatory duty.'" Pittstown Coal Group v. Stebben, 488 U.S. 105, 121

(1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)).  The purpose of the

writ is "to confer jurisdiction on district courts to compel a Government official or

agency to perform a duty owed to the plaintiff or to make a decision, but not to direct

or influence the exercise of discretion of the officer or agency in the making of the

decision."  Hill v. United States Board of Parole, 257 F. Supp. 129, 130 (M.D. Pa.

1966).  As the Third Circuit Court of Appeals has explained, "in order for mandamus

to issue, a plaintiff must allege that an officer of the Government owes him a legal

duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or

discretion.'  An act is ministerial only when its performance is positively commanded

6

and so plainly prescribed as to be free from doubt." <u>Harmon Cove Condominium</u>

<u>Ass'n, Inc. v. Marsh</u>, 815 F.2d 949, 951 (3d Cir. 1987) (quoting <u>Richardson v. United</u>

<u>States</u>, 465 F.2d 844, 849 (3d Cir. 1972)).   Further, "the party seeking mandamus

has the burden of showing that its right to issuance of the writ is 'clear and

indisputable.'" <u>Will v. United States</u>, 389 U.S. 90, 96 (1967) (quoting <u>Bankers Life &</u>

<u>Cas. Co. v. Holland</u>, 346 U.S. 379, 384 (1953)).

    The question here, then, is whether the defendants have a non-discretionary

duty to grant petitioner a waiver, or at least to issue a decision on plaintiff's

application to enter the country as a non-immigrant.  Petitioner seeks admission to

the United States pursuant to 8 U.S.C. § 1182(d), which provides for the temporary

admission of non-immigrants.  Under that subsection of the Immigration and

Nationality Act, an alien ineligible for a visa "may, after approval by the Attorney

General of a recommendation by the Secretary of State or by the consular officer

that the alien be admitted temporarily despite his inadmissibility, be granted such a

visa and may be admitted into the United States temporarily as a nonimmigrant in

the discretion of the Attorney General."  8 U.S.C. § 1182(d)(3)(A)(i).  The Attorney

General also has discretion to admit such ineligible aliens without a recommendation

from another official if that alien possesses "appropriate documents."  8 U.S.C. §

1182(d)(3)(A)(ii).  The statute does not, however, prescribe a time period in which

the Attorney General must render a decision.  Petitioner nevertheless contends that

he is eligible for such a waiver and the government should be compelled to respond

7

to his application.

The court finds that the issuance of a non-immigrant waiver to enter the country is not the sort of non-discretionary, ministerial duty that can lead to the issuance of a writ of mandamus. The act's language makes clear that the Attorney General "may" decide to admit an ineligible alien. The decision to allow such entry, however, is left to the Attorney General's discretion and is not "so plainly prescribed as to be free from doubt." Accordingly, a writ of mandamus cannot be issued ordering the Attorney General to grant petitioner a waiver.

Here, however, petitioner's complaint appears to be that his application for waiver has not been ruled upon.[2] He asks the court to order the government to adjudicate his claim. Several courts which have addressed similar issues have found that the writ of mandamus cannot be used to compel adjudication of visa applications and other immigration petitions. See, e.g., Qui v. Chertoff, 486 F. Supp. 2d 412, 418 (D. N.J. 2007) (finding that Congress did not provide any sort of time limitation in the portion of the Immigration and Nationality Act that allows for adjustment of status and thus "Congress did not intend to limit the discretion of immigration officials by specifying a certain time period within which they must act."); Li v. Chertoff, No. 06-13679, 2007 WL 541974 at *2 (S.D.N.Y. Feb. 16, 2007)

---

[2]Respondents indicate that petitioner may not have filed his application with the proper agency or provided all the required information with that application. They acknowledge that the instructions for filing that document could be confusing and inform the court that additional time may be necessary to determine the status of the application.

(finding that the court lacked jurisdiction to order that a visa application be adjudicated within a reasonable amount of time); <u>Zhang v. United States Citizenship & Immigration Serv.</u>, No. 05 Civ. 4086, 2005 WL 3046440 (S.D.N.Y. Nov. 8, 2005); <u>Li v. Gonzalez</u>, No. 06-5911, 2007 WL 1303000, at *23 (D.N.J. May 3, 2007) (finding that mandamus need not issue to require immigration officials to adjudicate a visa claim because "[d]efendants have no clear duty to perform a ministerial act for Plaintiffs.").

The court agrees with those courts which have found that no ministerial duty to adjudicate applications under the Immigration and Nationality Act because the decision on whether to grant the application is discretionary and the statute does not prescribe a time period in which that decision must be made.  <u>See, e.g.</u>, <u>Liu v. Chertoff</u> No. 07-3452, 2007 WL at *6 (D.N.J. April 30, 2008) (finding that "the permissive 'may' in the statute [8 U.S.C. § 1255(a)] commits that adjustment of an applicant's status, including the pace of the process, to the sound discretion of the Attorney General."); <u>Da Silva v. Gonzales</u>, No. 07-2278, 2008 WL at *6 (D.N.J. March 26, 2008) (finding that "the INA clearly states that the adjudication of I-485 applications lies in the discretion of the Attorney General, and that such adjudication is not reviewable by this Court.").  Federal regulations related to wavier under that section of the INA also do not prescribe a time period in which the decision must be made.  <u>See</u> 8 C.F.R. § 212.4.  Accordingly, the timing of the adjudication on plaintiff's application is discretionary, and no writ of mandamus can issue to compel

9

a decision.

While the court's ruling may seem harsh to the petitioner, who seeks entry to the United States to pursue a court claim for violation of his rights while detained by the United States, the court finds that other factors make this ruling both fair and necessary.  First, the court's ruling does not preclude petitioner from seeking relief from the court where he filed his civil cases.  His inability as of yet to enter the country almost certainly represents good cause to reschedule hearings on his cause of action.  Second, petitioner may obtain the relief he seeks from the defendants after they process his application.  In he does not obtain that relief, as explained above he could not turn to this court for relief anyway.  Finally, issuing a writ under these circumstances would circumvent the procedures prescribed in the statute and allow the petitioner to jump to the head of the line for consideration of his application.  Issuing the writ and ordering a decision on petitioner's application, would be unfair to those who follow the dictates of the statute.  See, e.g., Qui, 486 F.Supp.2d at 420 (finding that "[w]hen, as here, the Court lacks power to review the ultimate agency decision and the agency's cases are backlogged, granting the writ to compel adjudication would do nothing more than shuffle to the front of the line those I-485 applicants canny enough to file a complaint in federal district court.").

The court likewise lacks jurisdiction to issue a writ of mandamus altering the decision of the London consulate to deny petitioner a visa to pursue his lawsuits.  As discussed above, the INA provides discretionary authority to consular officials to

10

determine whether to grant aliens entry to the United States pursuant to 8 U.S.C. § 1182(d)(A)(3)(i).  The law contemplates those officials providing the Attorney General a recommendation, which the Attorney General has clear discretion to follow or ignore.  Since the consular official and the Attorney General have discretion to determine whether petitioner should be granted a visa, no clear magisterial duty exists to provide the visa.  Mandamus to the consular official is therefore inappropriate here as well.  If petitioner desires to appeal the consular decision, he has other means to do so.

**Conclusion**

For the reasons stated above, the court will deny the petition for a writ of mandamus.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TOSIN ADEGBUJI,** | : | **No. 3:08cv1714** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **MICHAEL MUKASEY, Attorney** | : | |
| **General of the United States,** | : | |
| **of America;** | : | |
| **MICHAEL CHERTOFF,** | : | |
| **Secretary, Department of Homeland** | : | |
| **Security;** | : | |
| **EMILIO GONZALEZ, Director, United** | : | |
| **States Customs and Immigration** | : | |
| **Service;** | : | |
| **JULIE MYERS, Assistant Secretary,** | : | |
| **Immigration and Customs** | : | |
| **Enforcement; and** | : | |
| **MARIE DAMOUR, Acting Minister,** | : | |
| **Consular Affairs,** | : | |
| **Respondents** | : | |

## ORDER

**AND NOW**, to wit, this 9th day of October 2008 the instant petition for a writ of mandamus (Doc. 1) is hereby **DENIED**.  The Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

12